Case 2:17-cv-00181 Document 30 Filed on 10/04/17 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
October 04, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL RAY WEST, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-181 |
| | § | |
| BEEVILLE COUNTY JAIL, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION
### TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff Michael Ray West is a Texas inmate appearing *pro se* and *in forma pauperis*. On April 26, 2017, Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983, claiming that prison officials acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. (D.E. 1). On July 24, 2017, Plaintiff filed a second civil rights action arising out of the same facts in which he challenged the denial of his various grievances. (2:17cv260, D.E. 1). Plaintiff's lawsuits were subsequently consolidated into one case. (D.E. 17).

Plaintiff's consolidated case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. For purposes of screening, Plaintiff has stated claims under the Eighth Amendment for deliberate indifference to his serious medical needs claims against: **(1) Medical Provider Lori Hudson, Nurse Donna Pfannstiel, Nurse Vicky Crumbliss, Nurse Jessica Espinoza, Nurse Candis Gonzalez, and Nurse Donna Randall** in their individual capacities; and **(2)**

**Senior Medical Practice Manager Tanya Lawson** in her official capacity for injunctive relief. The undersigned will order service on these defendants.

For the reasons set forth below, the undersigned respectfully recommends further that: (1) Plaintiff's claims for money damages against all Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) **Beeville County Jail, Warden Miguel L. Martinez, Assistant Warden Corey Furr, Assistant Warden Kenneth H. Putnam, and former McConnell Unit Warden Matt Barber be DISMISSED WITHOUT PREJUDICE**; and (3) Plaintiff's claims against the remaining Defendants be **DISMISSED WITH PREJUDICE** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is serving life imprisonment based on the following convictions: (1) an April 17, 1990 conviction for attempted murder out of Dallas County, Texas; (2) a June 24, 1997 conviction for aggravated assault with a deadly weapon out of Anderson County, Texas; (3) a February 27, 2001 conviction for murder out of Potter County, Texas; and (4) an October 1, 2003 conviction for assault on a public servant out of Jefferson County, Texas. The facts giving rise to Plaintiff's claims in this consolidated case

occurred in connection with Plaintiff's current assignment to the McConnell Unit in Beeville, Texas.

Plaintiff filed his first civil rights action against the Beeville County Jail and the following McConnell Unit officials: Warden Martinez, Assistant Warden Furr, Assistant Warden Putnam, and Senior Medical Practice Manager Tanya Lawson. Plaintiff claims that these defendants repeatedly failed to provide him with medical care following a head injury sustained by Plaintiff on January 6, 2017, and that such failure amounted to deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.

Plaintiff subsequently filed a second civil rights action arising out of the same facts where he names as defendants the following McConnell Unit officials: former McConnell Unit Warden Barber, Warden Martinez, Assistant Warden Furr, Assistant Warden Putnam, and Grievance Officer Cecilia R. Selzler. Plaintiff primarily complains in the second case about the rejection of numerous grievances filed by him in response to the alleged failure of prison officials to provide him with medical care. Plaintiff's two civil rights actions were subsequently consolidated into one case. (D.E. 17).

A *Spears*[1] hearing was held on August 8, 2017, where Plaintiff was given an opportunity to explain his claims. The undersigned agreed to Plaintiff's request to start over with his case and draft a new complaint. Thus, at the conclusion of the hearing and in an Order entered that same day, the undersigned directed Plaintiff to file an amended complaint and name all of the defendants he seeks to sue in connection with the claims raised in this consolidated case. (D.E. 22).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

On September 7, 2017, Plaintiff filed two pleadings, both entitled "Amended Complaint," in which he named the following McConnell Unit officials in their individual and official capacities: (1) Nurse Pfannstiel; (2) Nurse Crumbliss; (3) Nurse Espinoza; (4) Nurse Gonzalez; (5) Nurse Randall; (6) Sharon R. Ruiz, a member of the grievance staff; (7) Ms. Lawson; (8) Ms. Selzler; and (9) Medical Provider Lori Hudson.[2] (D.E. 25, pp. 3-4; D.E. 27, pp. 2-5). Plaintiff seeks declaratory, injunctive, and monetary relief. The following representations were made either at the *Spears* hearing or in Plaintiff's Amended Complaint (D.E. 25, 27) and are set forth as alleged by Plaintiff:

Plaintiff, a fifty-six year old male who suffers from mental illness, arrived at the McConnell Unit in 2006. He is currently housed in the unit's administrative segregation. On January 6, 2017, Plaintiff incurred severe bruises to his head as a result of banging his head on his cell's wall and floor. Plaintiff's head injury caused him to have dizziness and difficulty getting out of bed. Three days later, Plaintiff submitted an I-60 request to the McConnell Unit's mental health department, in which he sought medical attention for his head injury. On January 10, 2017, Medical Provider Hudson failed to call Plaintiff out to the medical department or otherwise provide any medical attention for the head injury.

On January 11, 2017, Plaintiff informed Nurse Pfannstiel of his medical issue involving his head injury, and she indicated she would inquire whether the medical provider could see Plaintiff. Nurse Pfannstiel, however, failed to provide Plaintiff with a physical examination or x-ray to assess Plaintiff's condition.

---

[2] While indicating that Ms. Hudson is a medical provider, Plaintiff does not state in his pleadings whether Ms. Hudson is a doctor, physician's assistant, or nurse practitioner.

On January 16, 2017, Plaintiff informed Nurse Crumbliss of his serious medical condition, and she communicated to Plaintiff her belief that Plaintiff had been scheduled to see the medical provider. Nurse Crumbliss, however, failed to provide Plaintiff with a physical examination or x-ray to assess Plaintiff's condition.

On January 17, 2017, Plaintiff again informed Nurse Pfannstiel about his head injury. Nurse Pfannstiel advised Plaintiff that he needed to submit another sick call request and did not provide Plaintiff with any medical attention. On January 25, 2017, Plaintiff advised Nurse Crumbliss about his head injury. Nurse Crumbliss responded that she did her part and did not know what else to say.

On January 26, 2017, Plaintiff filed his first grievance (Grievance No. 2017079324), in which he complained about not receiving medical care for his head injury. Grievance Officer Selzler and Medical Manager Lawson reviewed the claims in his grievance, denied Plaintiff any relief as to his grievance, and failed to cause Plaintiff to receive medical attention for his head injury. According to Plaintiff's testimony at the *Spears* hearing, this grievance as well as the many grievances detailed below were denied on the erroneous basis that Plaintiff had not sought to resolve his medical complaints informally through an I-60 request.

On January 27, 2017, Plaintiff submitted a second I-60 which detailed his head injury and the medical officials' failure to provide him with medical attention. Medical Provider Hudson again deprived Plaintiff of any medical attention by failing to provide adequate pain medication, a physical examination, or an x-ray.

On February 3, 2017, Plaintiff approached Nurse Crumbliss, who advised Plaintiff that he would not have a medical problem if he would stop harming himself. On February 6, 2017, Nurse Espinoza advised Plaintiff to file a grievance regarding his head injury and did not provide Plaintiff with any medical attention. On February 9, 2017, Nurse Pfannstiel advised Plaintiff to submit another sick call request and did not provide him with any medical attention. On February 10, 2017, Nurse Gonzalez responded to Plaintiff's request for medical attention for his head injury by only saying "ok" and not providing any actual treatment.

On February 14, 2017, Nurse Crumbliss told Plaintiff that "it's always something" after Plaintiff complained again to her of his head injury. On February 17, 2017, Plaintiff attempted to inform Nurse Randall of his medical problem, but she stated that Plaintiff was exposing himself and walked away from Plaintiff. One day later, Nurse Crumbliss informed Plaintiff that he would not be seen if he continued to harm himself.

On February 22, 2017, Plaintiff filed his second grievance (Grievance No. 2017093349) detailing his complaints about not receiving medical attention from Nurses Crumbliss, Espinoza, Pfannstiel, and Gonzalez between February 3 and 10, 2017. Grievance Officer Selzler and Medical Manager Lawson reviewed the claims in his grievance, denied Plaintiff any relief as to his grievance, and failed to cause Plaintiff to receive medical attention for his head injury.

On February 28, 2017, Plaintiff informed Nurse Randall that he was in pain and was unable to fall asleep. Without providing any medical care, Nurse Randall responded that Plaintiff would not have such problems if he continued to harm himself.

On March 6, 2017, Plaintiff filed his third grievance (Grievance No. 2017098883), in which he complained about not receiving medical care from Nurse Crumbliss on February 14 and 18, 2017.  Grievance Officer Selzler and Medical Manager Lawson reviewed the claims in his grievance, denied Plaintiff any relief as to his grievance, and failed to cause Plaintiff to receive medical attention for his head injury.

On March 7, 2017, Plaintiff informed Nurse Espinoza of his head injury and pain. Nurse Espinoza responded that there was nothing she could do but write his information down and report it to the medical provider.  Nurse Espinoza further told Plaintiff that it was up to the medical provider to see Plaintiff.

On March 16, 2017, Plaintiff filed his fourth grievance (Grievance No. 2017104867), in which he complained about not receiving medical care from Nurse Randall on February 28, 2017.  Grievance Officer Selzler and Medical Manager Lawson reviewed the claim in his grievance, denied Plaintiff any relief as to his grievance, and failed to cause Plaintiff to receive medical attention for his head injury.

On March 17, 2017, Plaintiff approached Nurse Pfannstiel, who responded by informing Plaintiff that "it's always something with you" and walked away.

On March 21, 2017, Plaintiff filed his fifth grievance (Grievance No. 2017107128), in which he complained about not receiving medical care from Nurse Espinoza on March 7, 2017.  Grievance Officer Selzler and Medical Manager Lawson reviewed the claim in his grievance, denied Plaintiff any relief as to his grievance, and failed to cause Plaintiff to receive medical attention for his head injury.

On March 28, 2017, Nurse Pfannstiel advised Plaintiff to submit another sick call request with regard to his complaints of serious pain due to his head injury and denied Plaintiff any medical attention for his head injury.

From March 30 through June 30, 2017, Plaintiff filed numerous other grievances (Grievance Nos. 2017112180, 2017113388, 2017115245, 2017112180, 2017130241, 2017122851, 2017130241, 2017138997, 2017152256, and 2017152256), in which he complained about repeatedly being denied medical attention for his head injury. Each grievance was reviewed and denied by either Grievance Officer Selzler, Senior Medical Practice Manager Lawson, or grievance staff member Ruiz. With respect to each denial, Plaintiff stated that these defendants failed to cause Plaintiff to receive medical attention for his head injury.

Plaintiff testified at the *Spears* hearing that he finally received medical attention for his head injury and mental health issues on May 24, 2017 in the form of pain and seizure medication. Despite receiving these medications on May 24, 2017, Plaintiff stated in his Amended Complaint that he seeks injunctive relief due to the failure of prison officials to treat him with adequate pain medication. (D.E. 27, pp. 16-17).

## III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis*

complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a

whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV. DISCUSSION

### A. Eleventh amendment immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v.*

*Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues each of the individual defendants in their official capacities for monetary damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against the individual Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

## B. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation omitted). A prison official violates this duty when by act or omission he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm. *Id.* at 834.

To state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that the officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303.(1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. *Farmer*, 511 U.S. at 837. In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints,

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).

However, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). Negligent medical care does not constitute a valid § 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982).

### (1) Defendants Hudson, Pfannstiel, Crumbliss, Espinoza, Gonzalez, and Randall

Plaintiff has alleged that he suffers from mental illness and that he sustained a serious head injury on January 6, 2017 after banging his head on the wall or floor. According to Plaintiff, his head injury resulted in bruises, dizziness, and difficulty getting out of bed. Plaintiff alleged that: (1) after filing I-60 medical requests on January 9 and 27, 2017, Medical Provider Hudson failed to provide Plaintiff with any medical treatment such as pain medication, a physical examination, or an x-ray; and (2) he repeatedly complained about his head injury to Nurses Pfannstiel, Crumbliss, Espinoza, Gonzalez, and Randall over several months but that each nurse ignored his complaints and denied providing Plaintiff with any medical attention for his head injury.

Accepting Plaintiff's allegations as true, which is required at this stage of the proceedings, Plaintiff has alleged sufficient facts to state deliberate indifference claims

against these medical officials for denial of adequate medical treatment in violation of the Eighth Amendment. Accordingly, the undersigned recommends retaining Plaintiff's deliberate indifference claims against Defendants Hudson, Pfannstiel, Crumbliss, Espinoza, Gonzalez, and Randall in their individual capacities.

*(2) Defendants Lawson, Selzler, and Ruiz*

Even though he testified about receiving medications on May 24, 2017, Plaintiff has clarified in his Amended Complaint that he seeks injunctive relief because prison officials have failed to provide him with adequate pain medication. Plaintiff's allegations indicate that Senior Medical Practice Manager Lawson is the supervisor charged with providing inmates with proper medical care. Thus, for purposes of injunctive relief regarding adequate medical care, Senior Medical Practice Manager Lawson appears to be the appropriate McConnell Unit official to name in her official capacity and should be retained in such capacity only.

Plaintiff also named Defendant Lawson in her individual capacity as a supervisor. It is well established, however, that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins,* 828 F.2d at 303-04. *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

In this case, Plaintiff alleged that: (1) he had filed numerous grievances complaining about the repeated failure to provide him with medical treatment for his head injury sustained on January 6, 2017; and (2) Defendant Lawson, along with grievance officers Selzler and Ruiz, effectively denied him medical care by reviewing Plaintiff's grievances and then erroneously denying them on the basis that Plaintiff had not sought to resolve his medical complaints informally through an I-60 request. Plaintiff's allegations indicate that Defendant Lawson only had knowledge of Plaintiff's complaints regarding the denial of medical care. Defendant Lawson, however, had no personal involvement in any of the medical decisions to ignore Plaintiff's requests for treatment or otherwise deny him medical care for several months. Plaintiff, therefore, has failed to allege a plausible individual capacity claim against Defendant Lawson in her role as a supervisory official.

Plaintiff's allegations, at best, point to his dissatisfaction with the decisions by Defendants Lawson, Selzler, and Ruiz to reject each of Plaintiff's grievances. Such allegations, however, fail to state a cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures

are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, the undersigned recommends dismissing Plaintiff's claims against Defendants Lawson, Selzler, and Ruiz in their individual capacities, dismissing Plaintiff's claims against Defendants Selzler and Ruiz in their official capacities, and retaining Plaintiff's deliberate indifference claim against Defendant Lawson in her official capacity only for providing potential injunctive relief.

    **C.**    **Defendants Not Named in the Amended Complaint**

At both the *Spears* hearing and in the August 8, 2017 Order, the undersigned granted Plaintiff the opportunity to re-draft his original complaint and name all the defendants he seeks to sue in connection with the claims raised in this consolidated case. (D.E. 22). Plaintiff did not list the following originally-named defendants in his Amended Complaint: Beeville County Jail, Warden Martinez, Assistant Warden Furr, Assistant Warden Putnam, and former McConnell Unit Warden Barber. Plaintiff, therefore, no longer seeks to bring any claims against these defendants. Accordingly, it is respectfully recommended that Defendants Beeville County Jail, Martinez, Furr, Putnam, and Barber be dismissed without prejudice from this action.

V. **CONCLUSION**

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, support claims of deliberate indifference to his serious medical needs against: **(1) Medical Provider Lori Hudson, Nurse Donna Pfannstiel, Nurse Vicky Crumbliss, Nurse Jessica Espinoza, Nurse Candis Gonzalez, Nurse Donna Randall** in their individual capacities; and **(2) Senior Medical Practice Manager Tanya Lawson** in her official capacity for injunctive relief. Accordingly, it is respectfully recommended that these claims be **RETAINED.** The undersigned will order service as to these defendants by separate order.

It is respectfully recommended further that: (1) Plaintiff's claims for money damages against all Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) **Beeville County Jail, Warden Miguel L. Martinez, Assistant Warden Corey Furr, Assistant Warden Kenneth H. Putnam, and former McConnell Unit Warden Matt Barber be DISMISSED WITHOUT PREJUDICE**; and (3) Plaintiff's claims against the remaining defendants be **DISMISSED WITH PREJUDICE** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 4th day of October, 2017.

*Jason Libby*
Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).